## 41269. BIDDY v. THE STATE.
(319 SE2d 842)

Marshall, Presiding Justice.

James Eugene Biddy was indicted, tried and convicted of the malice murder of his wife, Sherri (Count 1), the felony murder of his wife (Count 2), and aggravated assault on his wife's cousin, Kathy Jean Mosley (Count 3).[1] He was sentenced to one life sentence for Counts 1 and 2 combined, and a consecutive 10-year sentence for the aggravated assault.

There was evidence adduced at the trial as follows. At the time of the homicide, the appellant and his wife, Sherri, were separated, and she was living with her cousin, Kathy, who generally drove her to and from her job in Cartersville. On the day before the homicide, the appellant and his friend, Thurmond Clark, drove around Paulding and Cobb Counties to locate Sherri's residence. The appellant spent that night in a motel room where Clark was staying, and borrowed his car the next day while Clark was at work. That afternoon, the appellant purchased a .12 gauge shotgun and two choking devices. When Clark returned from work at 6:00 p.m. on July 21, his car and the appellant were not there. At approximately 10:30 p.m., the appellant returned, carrying the shotgun, which he said was jammed, and which he tried to sell to Clark. Clark noticed that his car was very dusty, that a pillow was missing from the rear seat, and that a roll of toilet paper and a spent shotgun shell (from the appellant's shotgun) were in the front seat. The appellant was seen driving Clark's car slowly down the dirt road on which Sherri was residing, on the morning of July 21, and the unoccupied car was observed on another dirt road in the same vicinity at 6:00 and 7:00 p.m. on that date. As Sherri and Kathy were driving away from the house at 8:50 p.m., the appellant fired his shotgun through Kathy's car's rear window, striking the back of Sherri's head,

---

[1] The crimes were committed on July 21, 1983. The jury returned its verdict of guilty on October 26, 1983. The defendant's pro se motion for new trial was filed on November 22, 1983; his counsel's motion for new trial was filed on November 28, 1983; the motion was amended by counsel on March 21, 1984; and the motion for new trial as amended was overruled on April 30, 1984. Notice of appeal was filed on May 29, 1984. The transcript was filed and the record docketed in this court on June 20, 1984. After briefing, it was submitted for decision without oral argument on August 3, 1984.

and causing the car to strike a tree. The appellant fired through the windshield, hitting both women, and then struck Sherri on the back of her head with the shotgun's butt, telling her that she had gotten what she deserved. The cause of death was multiple gunshot wounds to the back of the victim's head and to her left shoulder. The appellant then tried to kill Kathy, but, when his gun jammed and could not be reloaded, he walked into some nearby woods. After Kathy had called the sheriff, she observed Clark's car parked near her own car. Under a tree, approximately 100 feet from Kathy's driveway, were found a pillow, five beer cans, a pocketknife, and evidence that someone had been lying there. Midway between the tree and the driveway, were found four spent .12 gauge shotgun shells, which were found to have been fired from the appellant's shotgun. The shotgun, a choking device, and live shotgun shells were found in Clark's motel room. The appellant denied the shooting of the two victims, testifying that he had bought the shotgun for skeet shooting; that he was looking for Sherri to reconcile with her; that he had spent the night before the homicide under a tree in the woods near Kathy's house; that when he was unable to get Sherri to speak to him as she was driving away, he had fired at the car's side, back and tires; that he had then left "for good," not remembering having shot into the windshield and not knowing that the two women had been shot.

In his appeal, the appellant enumerates as errors the admission of certain testimony, and the sentence.

1. The first enumerated error is the trial judge's allowing the coroner to testify as to the contents of a report prepared by the coroner, allegedly in violation of the 10-day provision of OCGA § 17-7-211 (b).

OCGA § 17-7-211 (b) provides: "In all criminal trials, felony and misdemeanor, the defendant shall be entitled to have a complete copy of any written scientific reports [defined in subsection (a)] in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal. The request for a copy of any written scientific reports shall be made by the defendant in writing *at arraignment or within any reasonable time prior to trial.* If such written request is not made at arraignment, *it shall be within the sound discretion of the trial judge to determine in each case what constitutes a reasonable time prior to trial.* If the scientific report is in the possession of or available to the prosecuting attorney, he must comply with this Code section *at least ten days prior to the trial of the case.*" (Emphases supplied.)

In the present case, the appellant filed a motion requesting copies of all scientific reports of evidence to be used at trial, on October 17, 1983 — prior to his arraignment. The district attorney responded to the appellant's motion by supplying the appellant — on that same day — with a witness list, autopsy report, and crime lab report. On

October 19, the district attorney learned that the medical examiner, who was to have testified as to the cause of death as stated in the autopsy report, would be unable to attend the trial. The D. A. then had the coroner prepare a written report, which was hand delivered to the appellant's attorney on the morning of October 20 — four days prior to the trial, which began on October 24. The D. A. also filed a supplemental response to the appellant's request, on October 21.

Prior to the trial, the appellant's attorney made a motion for a continuance based primarily on the ground that he had not had sufficient time to prepare. The trial judge's overruling of this motion is not enumerated as error on appeal. At the time the coroner's testimony was offered at trial, the appellant objected to its admission on the ground that OCGA § 17-7-211 had been violated, but made no motion for a continuance or recess to interview the coroner or review his written report. In response to the appellant's objection, the D. A. stated the circumstances as to the coroner's report and testimony, as related hereinabove, which was not disputed by the appellant.

The appellant's request, only seven days prior to the trial, was not timely, which this court has held means that "whether it is made 'at arraignment' or at some other time, it must precede the tenth day before the trial of the case. Otherwise, it would be impossible for the state to comply with the statute." *State v. Meminger*, 249 Ga. 561, 564 (292 SE2d 681) (1982). The appellant argues that this impliedly mandates that the date for arraignment be set at least 10 days prior to the start of the trial of the case. However, OCGA § 17-7-91, which provides for arraignment, contains no such requirement. "There is no provision of law requiring that an accused be arraigned within any fixed period of time." *Brand v. Wofford*, 230 Ga. 750 (3) (199 SE2d 231) (1973). "Obviously, the ten[-]day time period may be reduced if ten days are not available either because the defendant delays the request, or because indictment or *arraignment occur within ten days of trial*." (Emphasis supplied.) *Law v. State*, 251 Ga. 525, 527 (307 SE2d 904) (1983). *Law* went on to provide, on p. 528, "If ten days are not available, the defendant is entitled to the document within a reasonable time and may be entitled to a continuance or recess as the trial judge shall determine. Only where the prosecuting attorney fails altogether to furnish the document does the exclusionary rule apply."

In *Law*, supra, p. 528, we held that "if there is no writing, there is nothing to which the statute attaches." Here, there was no written coroner's report at the time the untimely request was made. Even if the subsequently written report was required to be furnished to the appellant, we cannot say, as a matter of law, that the delivery to the appellant's counsel of a copy of the report four days prior to the trial was not reasonable under all of the circumstances, including the fact that the appellant was given fair warning of what the coroner's testi-

mony would be not only by his report, but also by the autopsy report submitted to the appellant on the very day the appellant filed his request for scientific reports.

2. The second enumerated error is the sentencing of the appellant as to the malice-murder, the felony-murder, and the aggravated-assault convictions, which convictions were indicated on the verdict form as to each individual count of the indictment. The appellant contends that, because the felony of aggravated assault is a lesser included offense of felony murder, he cannot be convicted of the felony upon which the felony-murder conviction is based, *Collier v. State*, 244 Ga. 553, 563 (6) (261 SE2d 364) (1979); that the trial judge did not vacate the conviction or sentence on either the malice murder or felony murder, rather let them both stand, and that if there is any doubt as to the effect of a criminal sentence, the defendant is to be given the benefit of that doubt, *Stephens v. State*, 245 Ga. 835, 837 (268 SE2d 330) (1980); and that, therefore, the malice-murder sentence ought to be vacated, and the felony merged into the felony-murder charge, leaving one murder conviction and one life sentence.

It is clear from the evidence presented at trial, and the form of the verdict returned by the jury, that the jury intended to convict the appellant of malice murder and aggravated assault. The state's theory, as reflected in the opening statement, closing statement, and the evidence presented, was that the appellant bought a shotgun and lay waiting for the murder victim, then fired several shots at the victim, incidentally assaulting Kathy Mosley. The assault, therefore, was incidental to the malice murder.

According to the form of the verdict, the jury found the appellant guilty of all three counts of the indictment. The indictment charged the appellant with the murder of Sherri Biddy, and the aggravated assault upon Kathy Jean Mosley. A jury should specify whether a conviction is for malice murder or felony murder. *Dillard v. State*, 251 Ga. 858 (1) (310 SE2d 518) (1984). However, considering the state's theory and the evidence presented, the jury clearly indicated that it found the appellant guilty of all three counts of the indictment, and sufficiently specified that the appellant was being found guilty of malice murder. The conviction of felony murder was simply surplusage, which was properly disposed of by the trial judge's sentence of only one life sentence for the two murder counts. Contrary to the appellant's contention, the malice-murder conviction and the aggravated-assault conviction would not merge, because the offenses were committed upon different victims. *Satterfield v. State*, 248 Ga. 538 (3) (285 SE2d 3) (1981).

Because murder and aggravated assault upon different victims do not merge as a matter of law, *Satterfield*, supra, and because the trial judge properly considered that the appellant could not be sentenced

twice for the murder of one person, the trial judge properly sentenced the appellant to life imprisonment for malice murder, and to 10 years consecutively for aggravated assault.

3. Although not enumerated as error by the appellant, the evidence adduced at the trial, as summarized in the statement of facts hereinabove, was amply sufficient to support the convictions of malice murder and aggravated assault. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 6, 1984.

*C. Gregory Culverhouse,* for appellant.

*William A. Foster III, District Attorney, Penny J. Udolf, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.