**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 6, 2019**

# In the Court of Appeals of Georgia

A19A1079. LONGO v. CITY OF DUNWOODY.

REESE, Judge.

John Longo filed an application for discretionary review in this Court, seeking to appeal the superior court's order affirming his conviction in the Dunwoody Municipal Court for violating a city ordinance. In his application, Longo asserted that the superior court had erred in finding that he had waived his right to an attorney in the municipal court. This Court granted the application, and Longo filed the above-styled appeal. For the reasons set forth infra, we affirm.

The undisputed evidence in the record shows that, in December 2015, the City of Dunwoody ("City") cited Longo for violating a city ordinance by performing construction on a residence without a permit. When Longo appeared without an attorney in the municipal court for arraignment on January 20, 2016, he signed a form

entitled "Defendant's Right to an Attorney." At the top of the form was the following statement:

> As a person accused of a crime, you have the right to be represented by any attorney under the United States and Georgia Constitutions at all critical stages of the criminal process, including your arraignment. If you cannot afford an attorney, you have the right to have an attorney appointed to represent you. If you wish to be interviewed to determine whether you qualify financially for a court appointed attorney, you may apply and be interviewed by a member of the court staff.

The form also included the following notifications:

> [A]lthough you may waive the right to an attorney, it is important that you be aware that an attorney can help you understand . . . [t]he nature of the charges against you[ ] and [t]he range of possible punishments for the charges, including a jail sentence for up to 12 months on each misdemeanor and/or 6 months on each local ordinance count[.]
>
> Even if you [choose] to waive your right to an attorney now, you can change your mind and obtain an attorney later. But you must act diligently in obtaining an attorney, either appointed or retained. If you do not act diligently, it is possible that you might later be deemed to have waived your right to an attorney.

2

Finally, the form stated, "I HAVE TAKEN THE TIME TO THOROUGHLY READ THE ABOVE AND I CHOOSE TO WAIVE MY RIGHT TO AN ATTORNEY AND AT THIS TIME WISH TO SPEAK TO THE SOLICITOR/PROSECUTOR ON MY OWN BEHALF." Longo signed and dated the form. Longo also requested a continuance to retain legal counsel, which the court granted.

When Longo returned to the municipal court on February 18, 2016, he still had not hired counsel. Longo told the court that he needed more time to find a lawyer because he had had to use his money "to move so [he would] have a place to live." The municipal court advised Longo that it would give him additional time to find a lawyer, even though he had already had "plenty of time" since the January proceeding. The court also warned Longo, however, that it would not grant any further continuances in the case. The City's solicitor then asked Longo on the record, "You understand that you have a right to have a lawyer? And if you couldn't afford a lawyer, the City would appoint one for you if you met the financial requirements?" Longo responded, "Yes." The solicitor explained to Longo the multiple benefits of having a lawyer represent him at trial. The solicitor also told Longo that he was facing a range of possible punishments that included a jail sentence for up to six

months on the ordinance violation. Longo stated that he understood his rights and that he was going to try to get a lawyer. The solicitor then asked Longo:

> Do you understand that if you come to trial the next time without a lawyer, *because you have not tried to avail yourself of a lawyer by application for a free lawyer*, that we will object to anything else going forward other than going forward [with trial] on the next occasion if you come without your lawyer now that you've been informed?[1]

Longo answered, "Yes, sir."

In addition, Longo signed a "Non-Jury Trial Demand"[2] during the February 18, 2016 proceeding.[3] The form stated, in relevant part: "I understand that I have the right to retain an attorney and in the alternative, I have the right to be interviewed for a court-appointed attorney if I cannot afford one." Longo checked and initialed a box on the form stating, "*I will bring my own attorney on the below court date. I understand that I am responsible for hiring an attorney as soon as possible, and that*

---

[1] (Emphasis supplied.)

[2] In his appellate brief, Longo misrepresents the purpose and effect of this form by referring to it as a "waiver of counsel" form.

[3] In fact, Longo completed the form not once, but twice, during the February proceeding; he left the first completed form somewhere near the courtroom and it could not be located, so he filled out and signed another one.

4

*not hiring an attorney is not legal grounds for a continuance*."[4] Significantly, Longo

did *not* check or initial the statement directly above that text, which stated, "I wish

to be interviewed for a court[-] appointed attorney[,]" nor did he ask to apply or be

interviewed for appointed counsel during that proceeding. In addition, the form stated

that Longo "attest[ed,] by signing this [non-jury trial] demand, that no promise [or]

threat has been made to me to waive my right to an attorney or waive my right to a

jury trial. I further attest that I have read this document in its entirety and understand

its contents." The municipal court set Longo's non-jury trial for March 30, 2016.

On March 30, Longo appeared for his trial without an attorney, telling the

municipal court trial judge ("trial judge")[5] that he did not have the money to pay for

an attorney "right now." The trial judge asked if Longo had been advised of his right

to an attorney in the previous proceedings, and the solicitor responded that he had

been advised on the record "in anticipation [that] this is what [Longo] would do

today." When the trial judge asked Longo if he wanted to apply for a court-appointed

attorney or go forward with the trial without a lawyer, Longo attempted to delay the

---

[4] (Emphasis supplied.)

[5] The judge who presided over Longo's municipal court trial in March 2016 was a different judge than the one who had presided over Longo's January and February proceedings.

5

proceedings, telling the judge, "[W]ell, right now I'm not making [any] money. But in time, I will. I can try [to hire a lawyer]." The trial judge asked Longo again if he wanted to apply for a court-appointed attorney, and, for the first time, Longo said that he did. The solicitor interjected, however, and asked the trial judge to listen to the audio recording of the February 18 proceeding before deciding whether to allow Longo to apply for counsel at that point. After listening to the recording, the trial judge found that both the solicitor and the previous judge had fully apprised Longo of his right to an attorney and that Longo had received a "sufficient warning" of the need to obtain counsel before trial. The trial judge found that Longo had waived his right to counsel and that the non-jury trial would proceed as scheduled. The trial judge told Longo that he still had the option of having a trial or he could plead guilty. Longo elected to plead guilty.

The trial judge then established that Longo was not under the influence of drugs or alcohol, that he had not been threatened or promised anything if he pled guilty, and that he understood he was giving up his right to a trial, to confront witnesses, and to remain silent. After the solicitor called witnesses to testify and

provide the factual basis for the ordinance violation,[6] the trial judge accepted Longo's guilty plea. On April 14, 2016, the trial judge sentenced Longo to six months in jail (to serve seventy-five days, with the remainder on probation), to pay a $500 fine, and to perform twenty hours of community service.

Longo filed a petition for a writ of certiorari to the superior court, claiming that he had been denied his Sixth Amendment right to counsel and that he had not entered his guilty plea knowingly and voluntarily.[7] Among other things, Longo argued that he was unaware that he could face jail time for the ordinance violation. An attorney hired by Longo filed a notice of appearance on August 1, 2016, and represented him

---

[6] According to the trial transcript, Longo convinced an 83-year-old woman to purchase a house that he would renovate, and then they would sell the house and split the profit. The woman paid for the house and all of the renovation materials, and Longo lived in the house while he tore down the interior and started some construction. After two years under this arrangement, during which Longo failed to fully pay the rent due and failed to complete any construction that met the City's building code, the woman evicted Longo and complained to the City's police department. The police contacted the City's chief building official, who found the house to be "in various stages of construction or teardown virtually in every portion of the residence, including the attic[.]" The City then cited Longo for unpermitted construction on a residence. In addition, according to the City's building official, Longo was not a licensed contractor.

[7] Longo dismissed his initial certiorari petition on June 27, 2016, but filed a renewal petition within six months, on July 26, 2016. The City moved to dismiss the renewal petition, but the superior court denied the motion. This Court denied the City's application for discretionary review of that order.

during the hearing on the petition. Following the hearing, during which the superior court took a temporary recess and reviewed the transcripts of the municipal court proceedings, the superior court ruled that Longo had waived his right to counsel by failing to exercise due diligence by either hiring an attorney or applying for appointed counsel. The court found that Longo had had plenty of time before trial to retain counsel, and "he could have applied [for appointed counsel] all along this process[,]" but he failed to do either. According to the superior court's order, Longo

> simply made no effort to retain or apply for legal counsel [prior to trial] and such failure to exercise due diligence by [Longo] caused his waiver of his right[ to] legal counsel at trial. It is clear to this Court that [Longo] was attempting to effect additional delay [by] appearing [in the municipal court] without counsel on March 30, 2016. [A] defendant is not free to play one right against another with the hope of creating error. Neither may a defendant who has knowingly waived counsel then complain of a lack of counsel when he determines that the judge's warnings were valid. Under such circumstances, the defendant's problems are of his own making, and he is bound by his poor choices.[8]

---

[8] (Citations and punctuation omitted.)

The superior court also ruled that, based on the entire record, Longo's guilty plea "was knowing, intelligent and voluntary." Thus, the court denied Longo's motion to withdraw his guilty plea.

Longo applied to this Court for discretionary review of the superior court's ruling, arguing that the superior court erred by finding that he waived his right to counsel in the municipal court.[9] This Court granted the application, and this direct appeal followed.

Under OCGA § 5-4-12, the scope of the superior court's review on certiorari from a decision of a lower tribunal is limited to alleged errors of law, as set forth in the petition, and the determination of whether the decision was supported by any evidence.[10] On appeal, this Court's duty is not to review whether the record supports the superior court's decision; instead, we must determine whether the record supports

---

[9] Longo does not argue on appeal that his guilty plea was involuntary.

[10] See OCGA § 5-4-12 (b); *Emory Univ. v. Levitas*, 260 Ga. 894, 897 (1) (401 SE2d 691) (1991) ("[I]n Georgia[,] the substantial-evidence standard is effectively the same as the any-evidence standard."); *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997) ("The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by any evidence.").

9

the decision of the lower tribunal.[11] With these guiding principles in mind, we turn now to Longo's specific claims of error.

Longo contends that the superior court erred in finding that he had waived his right to counsel "by merely arriving at court [for trial on March 30] without an attorney." Longo also suggests that he was "indigent"[12] at the time of the municipal

---

[11] See *Smith*, 228 Ga. App. at 865 (1).

[12] Under OCGA § 17-12-2 (6) (A), an "indigent person" or "indigent defendant" is defined as

> [a] person charged with a . . . municipal or county offense punishable by imprisonment who earns less than 100 percent of the federal poverty guidelines unless there is evidence that the person has other resources that might reasonably be used to employ a lawyer without undue hardship on the person or his or her dependents[.] In no case shall a person whose maximum income level exceeds 150 percent of the federal poverty level or, in the case of a juvenile, whose household income exceeds 150 percent of the federal poverty level be an indigent person or indigent defendant.

The same standard for determining indigent status and eligibility for appointed counsel applies to municipal courts. See OCGA §§ 17-12-23 (d) ("A city or county may contract with the circuit public defender office for the provision of criminal defense for indigent persons accused of violating city or county ordinances or state laws. If a city or county does not contract with the circuit public defender office, the city or county shall be subject to all applicable policies and standards adopted by the council for representation of indigent persons in this state."); 36-32-1 (f) ("Any municipal court operating within this state and having jurisdiction over the violation of municipal ordinances . . . shall not impose any punishment of confinement, probation, or other loss of liberty, or impose any fine, fee, or cost enforceable by confinement, probation, or other loss of liberty, as authorized by general law or municipal or county ordinance, unless the court provides to the accused the right to

court proceedings, and that the municipal court erred in failing to determine, on the record, whether he qualified for court-appointed counsel. These arguments lack merit for the following reasons.

1. As an initial matter, Longo's claim that he was "indigent" is not supported by the record. On the contrary, the record shows that Longo never asserted that he was indigent in the municipal court; instead, Longo repeatedly insisted – even during the March 30 proceeding – that he was going to hire an attorney. Further, because he failed to avail himself of the opportunity to apply for an appointed attorney, there is no evidence in the record to show that he met the definition of an "indigent defendant" under OCGA § 17-12-2 (6) (A) between January and March 2016.

As for Longo's argument that the trial court should have conducted an inquiry and determined, on the record, whether he was indigent, he has failed to cite to any authority that requires such a determination when the defendant had *not previously*

representation by a lawyer, and provides to those accused who are indigent the right to counsel at no cost to the accused. Such representation shall be subject to all applicable standards adopted by the Georgia Public Defender Council for representation of indigent persons in this state.").

11

*applied* for appointed counsel,[13] especially when, as here, the defendant expressly rejected the opportunity to do so.[14]

---

[13] The cases upon which Longo relies are distinguishable and inapplicable here. See, e.g., *Ford v. State*, 254 Ga. App. 413, 414 (563 SE2d 170) (2002) (The defendant applied for appointed counsel during arraignment, but his application was denied.); *Raines v. State*, 242 Ga. App. 727, 728 (531 SE2d 158) (2000) (The county's indigent defense office determined that the defendant was not indigent, and the trial court adopted that finding.); *Martin v. State*, 240 Ga. App. 246, 247 (523 SE2d 84) (1999) (The defendant applied for appointed counsel, but his application was denied.); *Houston v. State*, 205 Ga. App. 703, 703-704 (423 SE2d 431) (1992) (The defendant applied for appointed counsel during arraignment, but his application was denied. The public defender later confirmed that the defendant was still not indigent.).

Further, we note that all of these cases were decided before the Georgia legislature enacted the "Georgia Indigent Defense Act of 2003[,]" OCGA § 17-12-1 et seq. See Ga. Laws 2003, p. 191, § 1; see also Ga. Laws 2008, p. 846, §§ 31, 41 (revising OCGA §§ 17-12-24 (a) and 17-12-80 (a)). In the Act, as amended, the legislature specifically assigned the responsibility for determining eligibility for appointed counsel to the executive – not judicial – branch of the government, i.e., the "circuit public defender, any other person or entity providing indigent defense services," or the "governing authority" of a municipal corporation. See OCGA §§ 17-12-1 (b) ("The Georgia Public Defender Council shall be an independent agency within the executive branch of state government."); 17-12-24 (a); 17-12-80 (a); see also OCGA § 36-32-1 (establishment of municipal courts).

[14] See OCGA § 17-12-23 (b) (A defendant is not eligible for appointed counsel until, inter alia, "such person makes an application for counsel to be appointed.").

Thus, Longo has failed to demonstrate that, under the circumstances presented, the trial court's failure to conduct a specific inquiry to determine his eligibility for appointed counsel constituted reversible error.[15]

2. As for Longo's argument that the superior court found that he had waived his right to counsel "by merely arriving at court without an attorney[,]" this argument constitutes a clear misrepresentation of the record and the superior court's ruling.

The Sixth Amendment of the Constitution of the United States guarantees a criminal defendant the right to assistance of counsel before he can be convicted and punished by imprisonment.[16] For a non-indigent defendant,[17] however, the constitutional right to counsel entitles him to be defended by a counsel of his choosing only if he uses reasonable diligence to hire an attorney.[18]

> Since a non-indigent defendant's right to counsel is predicated upon his own diligence, a failure on his part to retain counsel may constitute a waiver of the right to counsel. Thus, when presented with a non-indigent defendant who has appeared for trial without retained counsel, the trial

---

[15] See *Smith*, 228 Ga. App. at 865 (1).

[16] *Davis v. State*, 279 Ga. App. 628, 630 (1) (631 SE2d 815) (2006).

[17] See Division 1, supra.

[18] *Hatcher v. State*, 320 Ga. App. 366, 371-372 (1) (739 SE2d 805) (2013).

judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control. Notwithstanding a defendant's present verbal insistence upon his right not to be tried without counsel, his own past actions may nevertheless demonstrate that the right has been waived. . . . Whether a particular defendant has exercised "reasonable diligence" in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion.[19]

Further, a defendant may waive his constitutional right to counsel and proceed to trial pro se, as long as that waiver is made knowingly and intelligently.[20] However,

_____

[19] Id. (citation and punctuation omitted).

[20] See *Davis*, 279 Ga. App. at 630-631 (1) ("To be valid, such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter. Each case must be evaluated on its own unique facts and circumstances, and there is no magic language that the trial court must use to determine whether a waiver of counsel is valid. The [S]tate has the burden of proving that the defendant received sufficient information and guidance from the trial court to knowingly and intelligently waive the right to counsel. The record should reflect a finding by the trial court that the defendant has elected to proceed pro se and should show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.") (punctuation and footnotes omitted).

where a non-indigent defendant has *not* invoked his right to represent himself at trial, but has *also failed* to hire an attorney to represent him, as in the instant case, the determination of whether he validly waived his right to counsel does not turn upon whether he knowingly and intelligently chose to proceed pro se.[21] Instead, a finding of waiver depends on whether the non-indigent defendant exercised reasonable diligence in securing representation.[22]

As shown above, in this case, the superior court reviewed the transcripts of the February and March 2016 municipal court proceedings and heard argument from the parties before concluding that Longo had failed to exercise any diligence in obtaining the services of an attorney, either by retaining one or by applying for appointed counsel.

---

[21] See *Burnett v. State*, 182 Ga. App. 539, 541-542 (1) (356 SE2d 231) (1987).

[22] See *Hatcher*, 320 Ga. App. at 373 (1); *Burnett*, 182 Ga. App. at 541 (1); see also *Collins v. State*, 269 Ga. App. 164, 165-167 (603 SE2d 523) (2004) (The defendant "was repeatedly and fully cautioned that the case would proceed to trial as scheduled despite his [action] in firing counsel on the eve of trial. Notwithstanding the trial court's warnings both at the motions hearing ten days before trial and again at the call of his case two days before trial, [the defendant] chose to make little effort, if any, to obtain new counsel in the interim and refused the trial court's offer of ['standby counsel'] to assist him with his defense." This Court ruled that, under these circumstances, the trial court did not abuse its discretion in denying the defendant's motion for a continuance to hire counsel and did not deprive the defendant of his right to counsel.).

We find that the facts presented herein are remarkably similar to those presented in this Court's opinion in *Hatcher v. State*,[23] in which the defendant was charged with multiple counts of child molestation.[24] In *Hatcher*, the defendant repeatedly told the trial court, over a period of three months, that he was in the process of retaining counsel, and the trial court advised him on multiple occasions to "make a better effort" to do so.[25] When the defendant appeared in the trial court for jury selection, the court inquired as to why he had appeared without counsel.[26] The defendant responded that he had paid an attorney some money but "didn't have enough money[,]" and he told the court that he had "no choice but to go with a public defender."[27] The trial court explained to the defendant that he could not, just before trial, "suddenly say [he] want[s] to get a public defender," and reminded the defendant that the court had been "telling him for months to get a lawyer. [But the defendant] never did and never applied for the public defender and it's time to go to

---

[23] 320 Ga. App. at 366-371.

[24] See id. at 366.

[25] Id. at 372 (1) (punctuation omitted).

[26] Id. at 368.

[27] Id. (punctuation omitted).

16

[trial]."[28] The defendant proceeded to trial pro se.[29] On appeal from his convictions, the defendant argued the trial court should have made a "proper inquiry" to determine whether he was entitled to appointed counsel.[30] This Court reviewed the many colloquies between the defendant and the trial court,[31] and ruled that the court did not err in failing to conduct a further inquiry into the defendant's indigence at trial where: the defendant had asserted at arraignment that he was employed and could afford to hire counsel; the court had advised him, weeks before trial, that it was his responsibility to apply for appointed counsel if he desired to do so; the defendant first raised the issue of a public defender on the day of jury selection; he made no effort to apply for appointed counsel prior to trial; and he insisted that he still planned to hire counsel, even after he asked about a public defender prior to jury selection.[32] According to this Court, under these circumstances, the defendant waived his right

---

[28] Id. at 369-370 (punctuation omitted).

[29] Id. at 371.

[30] Id. at 371 (1).

[31] Id. at 366-371.

[32] Id. at 372-373(1).

17

to counsel by failing to exercise reasonable diligence to retain counsel and by making no effort to apply for appointed counsel.[33]

Similarly, in this case, the superior court reviewed the entire record before concluding that the municipal court was not required to "conduct any more inquiry into why [Longo] had appeared without counsel at trial than it already had[ ]" and that the record supported a finding that Longo had waived his right to counsel by failing to exercise due diligence in hiring or applying for counsel.[34]

We find that Longo has not demonstrated any reversible error in the lower courts' rulings and, therefore, we affirm.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[33] Id. at 373-374 (1).

[34] See *Hatcher*, 320 Ga. App. at 373 (1); see also *Preston v. State*, 327 Ga. App. 556, 558 (760 SE2d 176) (2014).